BEARD, Appellant,

v.

BEARD, Appellee.

[Cite as *Beard v. Beard* (1998), 130 Ohio App.3d 102.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 97–P–0109.

Decided Sept. 28, 1998.

*Christley, Herington & Pierce* and *James R. Silver,* for appellant.

*Kenen & Snider Co., L.P.A.,* and *Harvey A. Snider,* for appellee.

---

FORD, Presiding Judge.

Appellant, Patricia W. Beard, appeals from a judgment of the Portage County Court of Common Pleas, Domestic Relations Division, modifying the child support obligation of appellee, Gerald E. Beard.

Appellant and appellee were married on September 4, 1976, and had three children; Andrew, born May 27, 1978, Karyn, born September 17, 1980, and Emily, born July 24, 1982. The couple was divorced pursuant to an order filed on November 5, 1992. At that time, the trial court ordered the parties to abide by a shared parenting plan. On June 9, 1993, appellee filed a motion to modify the divorce decree concerning child support. In a judgment entry filed on December 21, 1995, the trial court increased appellee's child support obligation to $590.24 per month.

Appellee appealed that judgment entry to this court. *Beard v. Beard* (Apr. 4, 1997), Portage App. No. 96–P–0011, unreported, 1997 WL 184766 (*"Beard I"*). In that opinion, we first concluded that both appellee and appellant were residential parents of each of the parties' three children. We further held that appellee was entitled to a reduction of his child support obligation proportional to the time that the children resided with him. Therefore, we remanded the matter "so that the trial court may properly credit [appellee] for the time that he was the residential parent of the children."

On remand, the trial court found that the children resided with appellant sixty-five percent of the time, while thirty-five percent of their time was spent with appellee. The trial court then reduced appellee's child support obligation from $590.24 per month to $124.92 per month. The court also modified appellee's child support payments effective June 9, 1996, because the parties' oldest child graduated from high school on that date, and, therefore, became emancipated. The court further reduced appellee's child support obligation by fifty percent until his previous overpayments of $2,203.71 were rectified.

Appellant timely filed a notice of appeal and asserts the following assignments of error:

"I. The trial court erred by reducing [appellee's] child support obligations by 79%, instead of the 35% as ordered by the Eleventh District Court of Appeals.

"II. The Ohio Supreme Court's decision in *Pauly v. Pauly* (1997), 80 Ohio St.3d 386, 686 N.E.2d 1108, has rendered argument number [one] moot, and

[appellee's] child support obligation should be returned to $590.24 per month, effective July 11, 1994."

Appellant argues in each assignment of error that the trial court erroneously calculated appellee's child support obligation; therefore, we will address them in a consolidated manner. The issues raised in this appeal require a detailed discussion of R.C. 3113.215(C) and 3113.215(B)(6)(a), the decision of the Supreme Court of Ohio in *Pauly v. Pauly* (1997), 80 Ohio St.3d 386, 686 N.E.2d 1108, and our decision in *Luke v. Luke* (Feb. 20, 1998), Lake App. No. 97–L–044, unreported, 1998 WL 172813.

R.C. 3113.215(C) states:

"Except when the parents have split parental rights and responsibilities, *a parent's child support obligation for a child for whom the parent is the residential parent and legal custodian shall be presumed to be spent on that child and shall not become part of a child support order*, and a parent's child support obligation for a child for whom the parent is not the residential parent and legal custodian shall become part of a child support order." (Emphasis added.)

On the other hand, R.C. 3113.215(B)(6)(a) provides:

"If the court issues a shared parenting order in accordance with section 3109.04 of the Revised Code, the court shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in division (E) of this section, through line 24, except that, if the application of the schedule and the worksheet, through line 24, would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in division (B)(3) of this section, the court may deviate from the amount of child support that would be ordered in accordance with the schedule and worksheet * * *."

In *Pauly,* the Supreme Court of Ohio addressed issue of "whether a parent paying child support under a shared parenting plan is entitled to an automatic credit for the time his children reside with him." *Id.,* 80 Ohio St.3d at 387, 686 N.E.2d at 1109. Although we answered this question in the affirmative in *Beard I,* the Supreme Court of Ohio disagreed and held in *Pauly*:

"R.C. 3113.215(B)(6) does not provide for an automatic credit in child support obligations under a shared parenting order. However, a trial court may deviate from the amount of child support calculated under R.C. 3113.215(B)(6) if the court finds that the amount of child support would not be in the best interest of the child." *Id.* at syllabus.

Thus, *Pauly* implicitly overruled that portion of *Beard I* relating to the automatic credit issue.

■ In reaching its conclusion, the Supreme Court of Ohio explained that R.C. 3113.215(B)(6)(a), rather than 3113.215(C), should be used to compute child support payments under a shared parenting order. *Id.* at 387–388, 686 N.E.2d at 1109–1111. Thus, *Pauly* stands for the proposition that R.C. 3113.215(C) is inapplicable when there is a shared parenting agreement. It follows that the residential parent's obligation is not presumed to be spent on the child because R.C. 3113.215(B)(6), which applies to shared parenting agreements, makes no such provision. *Luke* at 12.

In *Luke*, this court applied the *Pauly* analysis to a child support calculation in the context of a shared parenting agreement, and held that in applying R.C. 3113.215(B)(6)(a):

"[I]t follows from *Pauly* and the statute that *both* parents under a shared parenting plan are required to pay child support as calculated in the child support worksheet. In our considered opinion, this would suggest an 'offset' of one obligation from the other, rather than two support orders. Although the *Pauly* court did not expressly so hold, it is reasonable to conclude from its decision that *before* a court reaches the issue of whether to deviate from the guidelines by giving a parent credit for the time the child resides with that parent it must first offset each parent's child support obligation from the other's." (Emphasis *Sic.*) *Luke* at 12–13.

■ As a result of the Supreme Court's *Pauly* decision and our decision in *Luke*, we must alter our prior mandate to the trial court to calculate the parties' respective child support obligations. First, the trial court must calculate the parties' child support obligations implementing the worksheet provided in R.C. 3113.215(E). Second, using line 24 of that worksheet, the trial court must subtract the smaller support obligation from the larger obligation, the difference being the "net order" that must be paid by the obligor parent. This is the amount of child support to be paid pursuant to the worksheet.

However, we note that the trial court has discretion to deviate from the amount resulting from the worksheet if it "would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in [R.C. 3113.215(B)(3) ]." R.C. 3113.215(B)(6)(a). Pursuant to R.C. 3113.215(B)(6)(b)(i), "extraordinary circumstances of the parents" includes "[t]he amount of time that the children spend with each parent[.]" When deviating in this manner, the trial court must set forth findings of fact supporting the determination. R.C. 3113.215(B)(6)(a).

In summary, appellant's assignments of error are well taken. This matter is reversed and the cause is remanded to the trial court to recalculate appellee's child support obligation. In so doing, the court must first determine the parties' respective child support obligations using the worksheet of R.C. 3113.215(E). The court should not provide an automatic credit as stated in *Beard I* because that approach has been rejected by the Supreme Court of Ohio and our subsequent *Luke* decision. Next, pursuant to *Luke,* the court must set off the amounts of the support obligation for each spouse, for a net child support order. Finally, the trial court may, upon providing appropriate factual findings in its judgment entry, deviate from the child support amount resulting from the worksheet calculation and the accompanying set off.

For the foregoing reasons, appellant's assignments of error are well taken. The judgment of the Portage County Court of Common Pleas, Domestic Relations Division is reversed, and the case is remanded for proceedings consistent with this opinion.

*Judgment accordingly.*

NADER and WILLIAM M. O'NEILL, JJ., concur.