OPINION
This timely appeal arises from the parties' divorce proceeding. The trial court's judgment imposes various monetary obligations upon Martin J. Fernback ("Appellant") which he now appeals. For the following reasons we affirm in part, reverse in part and remand this case for further proceedings.
Appellant and Annette M. Fernback ("Appellee") were married on November 19, 1983. Two children were born during the marriage: Robert, born on April 30, 1987; and Joseph, born on January 14, 1991. During the marriage, Appellant worked at the General Motors ("GM") plant in Lordstown, Ohio. Appellee worked at the Mahoning County Department of Human Services until 1987, at which time she became a full time mother and housewife.
During the marriage, the couple accumulated certain assets, including their home, valued at $150,000.00 with an outstanding mortgage of $50,000.00. Appellant also accumulated a Personal Savings Plan (PSP) valued at $62,934.72 and a Savings Stock Purchase Program (SSPP) account valued at $92,872.92.
Appellee filed a complaint for divorce on August 19, 1999. On November 1, 1999, a magistrate issued a Civ.R.75(N) order requiring Appellant to pay temporary child support in the amount of $552.39 per child per month and temporary spousal support in the amount of $600.00 a month, retroactive to August 19, 1999. Appellant was also ordered to pay the monthly mortgage payment on the home, utilities for the home and automobile insurance for both vehicles.
On November 5, 1999, Appellant requested a stay of the support order. On November 30, 1999, a hearing was held and the magistrate revised the order on January 12, 2000. The revised Civ.R. 75(N) order required Appellant to pay temporary child support in the amount of $535.19 per child per month and temporary spousal support in the amount of $300.00 a month.
A contested divorce hearing occurred on July 25, 2000, and was continued to August 28 and September 25, 2000. On December 1, 2000, the trial court issued a divorce decree to both parties, including findings of fact and conclusions of law. Appellant filed a timely notice of appeal on December 21, 2000.
Appellant's assigned errors relate to the trial court's decisions regarding child support, spousal support, and the valuation and division of marital property. It is apparent that all of Appellant's assignments of error are reviewed under an abuse of discretion standard. See Biskerv. Bisker (1994), 69 Ohio St.3d 608, 609; Pauly v. Pauly (1997),80 Ohio St.3d 386, 390; Martin v. Martin (1985), 18 Ohio St.3d 292,294-295. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. "A reviewing court * * * should not substitute its judgment for that of the trier of fact unless, considering the totality of the circumstances, it finds that the trial court abused its discretion." Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131.
Appellant's first assignment of error asserts:
 "THE TRIAL COURT ABUSED ITS DISCRETION AND, THEREFORE, ERRED TO THE PREJUDICE OF APPELLANT WHEN IT DID NOT DEVIATE FROM THE CHILD SUPPORT GUIDELINES BASED UPON THE SHARED PARENTING PLAN."
Appellant argues that the trial court abused its discretion when it ordered Appellant to pay one hundred percent of his calculated support obligation despite the fact that he was to retain custody of the children half of the time. The child support calculation was based on the worksheet found in former R.C. § 3113.215, which was in effect at the time. Appellant contends that numerous Ohio appellate cases have held that a court does not abuse its discretion when it deviates from the child support worksheet calculations under a shared parenting agreement. Appellant posits that a failure to consider a deviation from the child support calculation in a shared parenting situation is an abuse of discretion.
Appellant cites many cases which have held that a deviation from the worksheet calculation of child support was appropriate in shared parenting situations. See, e.g., Zeefe v. Zeefe (1998), 125 Ohio App.3d 600,609; Looker v. Looker (Dec. 29, 1992), Franklin App. No. 92 AP 1064, unreported.
Appellant argues that he incurs the same child-rearing expenses as Appellee, including the cost of maintaining an appropriate residence for the children, because the children are with him half of the time. Appellant asserts that requiring him to pay the entire obligation without any deviation is an inequitable result and not in the best interest of the children.
Appellee responds that Ohio does not provide for an automatic credit in child support obligations under a shared parenting plan. See Pauly,supra, 80 Ohio St.3d at 386, and former R.C. § 3113.215(B)(6). Appellee argues that a deviation is appropriate when, "* * * the amount of child support would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child." Former R.C. § 3113.215(B)(6).
Appellee contends that the trial court calculated child support properly within the guidelines of the statute. Appellee argues that the trial court considered all the statutory factors and properly concluded that a deviation from the calculated amount was unwarranted.
We cannot determine if Appellant's assignment of error has merit because the record gives contradictory signals as to the trial court's intent to deviate from the child support worksheet found in former R.C. § 3113.215(E). For this reason we must reverse and remand the child support order for further proceedings.
Although a trial court's determination of child support will not be disturbed absent an abuse of discretion, the terms of former R.C. §3113.215 and the child support calculations contained therein, "are mandatory in nature and must be followed literally and technically in all material respects." Marker v. Grimm (1992), 65 Ohio St.3d 139, paragraph two of the syllabus. A trial court is bound to calculate child support payments in accordance with the sample worksheet in former R.C. §3113.215(E). Rock v. Cabral (1993), 67 Ohio St.3d 108, 110. There is a rebuttable presumption that the amount of child support calculated on the worksheet is correct. Id. at 110. "Court-ordered deviations from the schedule and worksheet are not permitted absent full and strict compliance with the requirements of R.C. § 3113.215(B)(1)(a) and (b)." Id. at 110.
If the trial court had intended to deviate from the worksheet calculation, the court was required to specifically state that the calculated amount was unjust or inappropriate and that it was not in the best interests of the children. The court was also required to provide findings to support its deviation. Former R.C. § 3113.215(B)(1)(b);Marker, supra, 65 Ohio St.3d 139 at 142.
Appellate courts in Ohio have had widely differing views on the issue of how to calculate child support in a shared parenting plan. A problem arises in shared parenting situations because the corresponding child support worksheet, found in former R.C. § 3113.215(E), does not take into account that both parents assume the role of residential parent in a shared parenting arrangement. In fact, unless the court orders otherwise, both parents are required to be treated as the residential and legal parent:
 "Unless the context clearly requires otherwise and except as otherwise provided in the order, if an order is issued by a court pursuant to this section [R.C. Chapter 3109] and the order provides for shared parenting of a child, each parent, regardless of where the child is physically located or with whom the child is residing at a particular point in time, as specified in the order, is the `residential parent,' the `residential parent and legal custodian,' or the `custodial parent' of the child." (Emphasis added.)
R.C. 3109.04(K)(6). The worksheet found in former R.C. §3113.215(E) only provides for one ultimate obligor parent, and does not make any obvious automatic adjustments for the fact that the obligor parent may be the residential parent and may very likely have custody of the child half the time. Up to line 26 of the worksheet, though, calculations are made for both parents so that either could be designated as the obligor.
The significance of being the residential parent is revealed in former R.C. § 3113.215(C), which states:
 "Except when the parents have split parental rights and responsibilities, a parent's child support obligation for a child for whom the parent is the residential parent and legal custodian shall be presumed to be spent on that child and shall not become part of a child support order, and a parent's child support obligation for a child for whom the parent is not the residential parent and legal custodian shall become part of a child support order." (Emphasis added.)
When only one parent is the residential parent, that parent's obligation is ignored and the other parent becomes the sole obligor by default. The obligor's payment is then forwarded to the residential parent. Former R.C. § 3113.215(C) prevents the useless and wasteful gesture of the residential parent writing a child support check every two weeks, simply to receive the same check back again.
Pauly held that former R.C. § 3113.215(C) is not applicable to shared parenting situations. 80 Ohio St.3d at 389. If the statutory presumption were applied literally to shared parenting, it would mean that neither parent would be required to pay child support because both parents act as residential parents and both parents' obligations would be deducted from the order. Although it is clear that former R.C. §3113.215(C) does not apply to shared parenting, it is not at all clear what presumption, if any, should be applied in shared parenting situations.
Some appellate courts have held that both parents are required to pay child support under a shared parenting plan, but that each parent should be given credit for the time the children are with him or her, and that such credit is not a deviation from the worksheet calculations. Weddellv. Weddell (June 29, 1994), Montgomery App. No. 14274, unreported;Looker, supra.
Other appellate courts have held that both parents are required to pay child support, but that the amounts should be automatically offset so that obligor's payment is reduced by the obligee's share of child support. Beard v. Beard (1998), 130 Ohio App.3d 102; Luke v. Luke (Feb. 20, 1998), Lake App. No. 97-L-044, unreported; Weinberger v. Weinberger
(May 15, 1998), Hamilton App. No. C-970552, unreported. This is the same method used by the split parenting worksheet in former R.C. §3113.215(F). Split parenting arises when, "there is more than one child who is the subject of an allocation of parental rights and responsibilities and each parent is the residential parent and legal custodian of at least one of those children." See former R.C. §3113.215(A)(8). The Ohio Supreme Court has specifically held that split parenting child support calculations must not be used to determine shared parenting child support. Pauly, supra, at 387-388.
The above examples show that there is a general consensus that both parents are responsible for paying their respective portions of child support under a shared parenting plan, but there is no consensus as to what that actually means.
The guidelines for determining child support obligations, when a shared parenting plan is involved, are set forth in former R.C. §3113.215(B)(6)(a), which states:
 "If the court issues a shared parenting order in accordance with section 3109.04 of the Revised Code, the court shall order an amount of child support to be paid under the worksheet set forth in division (E) of this section, through line 24, except that, if the application of the schedule and the worksheet through line 24, would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in division (B)(3) of this section, the court may deviate from the amount of child support that would be ordered in accordance with the schedule and worksheet, through line 24, shall consider those extraordinary circumstances and other factors or criteria if it deviates from that amount, and shall enter in the journal the amount of child support calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet, through line 24, its determination that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination." (Emphasis added.)
Former R.C. § 3113.215(B)(6)(b) lists "extraordinary circumstances of the parents" as including, inter alia, the amount of time the children spend with each parent, the ability of each parent to maintain adequate housing for the children and each parent's expenses.
In Pauly, the Ohio Supreme Court rejected the idea that a shared parenting plan requires an automatic credit for the time each parent has custody of the children:
 "R.C. 3113.215(B)(6) does not provide for an automatic credit in child support obligations under a shared parenting order. However, a trial court may deviate from the amount of child support calculated under R.C. 3113.215(B)(6) if the court finds that the amount of child support would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child."
 Pauly, supra, 80 Ohio St.3d at syllabus. The obligor in Pauly was seeking a credit against the amount of child support he owed for the time his children resided with him, which went beyond the shared parenting plan schedule. In rejecting the obligor's argument for an automatic setoff, Pauly also held that there was no automatic deduction of the residential parent's obligation on the worksheet, as provided by former R.C. § 3113.215(C), because both parents under a shared parenting plan are treated as residential parents. Id. at 388-389. Pauly was recently reaffirmed by the Ohio Supreme Court in Hubin v. Hubin (2001),92 Ohio St.3d 240.
Despite the wide variation in appellate court opinions on this issue,Pauly made it very clear that in shared parenting situations the child support worksheet must be followed through line 24, and that any deviation from the child support calculations in shared parenting cases must come from the trial court, not from an automatic adjustment based on the amount of time each parent retains custody of the children.
In the case now before us, although Appellant is not arguing for an automatic reduction in his support obligation, he does argue that the trial court abused its discretion when it did not make any adjustment to his obligation based on the time the children spend with him. Unfortunately, the trial court's judgment entry contains contradictory rulings which make it impossible to determine if the court deviated from the worksheet. The judgment entry is very clear that the court was not ordering a deviation from the child support worksheet: "The Court * * * finds that it would not be in the best interests of the minor children to deviate from the child support worksheet." (Dec. 1, 2000 Order, 19). Yet, the court did not order Appellee to pay her portion of child support, as found on line 24 of the worksheet. (Dec. 1, 2000 Order, Exh. A, 3). The court also designated Appellant as the only obligor parent. This must be viewed as a deviation from line 24 of the worksheet, which treats both parents as obligors. See Pauly, supra, 388-389.
Because of the considerable confusion caused by former R.C. §3113.215 when shared parenting is involved, this Court must determine the means by which a court will follow the worksheet calculations in a shared parenting situation. Unless the trial court explicitly deviates from the worksheet, both parties subject to a shared parenting plan must pay the amounts listed on line 24 (the "actual annual obligation") of the child support worksheet found in former R.C. § 3113.215(E). Line 24 contains two calculations, one for each parent, in this case $13,789.88 due by Appellant and $475.12 due by Appellee, for a combined child support amount of $14,265.00. Because there are two residential parents in a shared parenting plan, each parent should be entitled to receive back one-half of the total combined child support obligation as their portion. In conformity with Pauly, this one-half division has nothing to do with the amount of time the child or children spend with each parent, but is due to the existence of two residential parents, each of whom becomes both the obligor and the obligee of child support. Finally, the trial court can explicitly deviate from this formula pursuant to former R.C. § 3113.215(B)(6), by: 1) finding that the worksheet amount would be unjust or inappropriate and would not be in the best interests of the children; 2) stating findings of fact supporting the deviation; and 3) considering the deviation factors found in R.C. §3113.215(B)(3) and (B)(6)(b). The amount of time each parent actually spends with the child is a relevant factor in considering whether a deviation from the worksheet is warranted.
From the record before us, we cannot determine whether the trial court intended to follow the worksheet calculations or intended to deviate from them. Although it is apparent that the trial court did not make an adjustment because Appellant took care of the children almost half the time, this only becomes an issue if the trial court intended to deviate from the worksheet. As stated above, the trial court is not required to make an adjustment based on the amount of time each parent spends with the children. Nevertheless, the trial court's discretion is limited to either following the worksheet or properly deviating from it. We must reverse the order of child support and remand it to the trial court for a clear determination of one of those two options.
Appellant's second assignment of error states:
 "THE TRIAL COURT ABUSED ITS DISCRETION AND, THEREFORE, ERRED TO THE PREJUDICE OF APPELLANT WHEN IT DETERMINED THE AMOUNT OF INCOME THAT WOULD BE IMPUTED TO APPELLANT."
Appellant argues that the trial court erroneously determined that Appellant was capable of working overtime and should not have included imputed overtime earnings in the child support calculation. Appellant testified that he did work a substantial amount of overtime in 1999 because GM had a special project that year. (Aug. 28, 2000, Tr. 185). Appellant also testified that he had no control over overtime employment. He testified that possible overtime was determined by the GM superintendent and was available only when another supervisor was ill. (Aug. 28, 2000, Tr. 66-67, 184). Appellant stated that no overtime was available in 2000. (Aug. 28, 2000, Tr. 144, 188-189). Appellant also testified that there were other maintenance supervisors that did not work any overtime. (Aug. 28, 2000, Tr. 78-79). Nevertheless, the trial court determined that Appellant was the only maintenance supervisor that did not work overtime in 2000. (Dec. 1, 2000, Order, 14). Appellant contends that the trial court used a flawed analysis to impute potential overtime income.
In addition, Appellant argues that the trial court used incorrect numbers in the child support worksheet. In particular, Appellant notes that the trial court determined his base salary to be $2,767.50 over twenty-four pay periods. Using this figure, Appellant's base salary would be $66,420.00 per year. However, Appellant argues that the trial court entered Appellant's base salary as $68,507.00 on the worksheet.
Appellee contends that Appellant has confused imputed income with overtime income. Appellee argues that imputed income accounts for the parent who is unemployed and is based upon recent work history, occupational qualifications, prevailing job opportunities and salary levels in the community. See former R.C.§ 3113.215(A)(5). Appellee notes that income was correctly imputed to her but no income was imputed to Appellant. Appellee points out that overtime income is accounted for differently than imputed income, which is governed by former R.C. §3113.215(B)(5)(d). Appellee insists that the trial court correctly averaged Appellant's overtime income from the preceding three years as required by the child support guidelines.
This assignment of error lacks merit. When a court is calculating the gross income of a parent, the court must include the lesser of the following as income from overtime:
 "(i) The yearly average of all overtime and bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed;
"(ii) The total overtime and bonuses received during the year immediately prior to the time when the person's child support obligation is being computed."
R.C. § 3113.215(B)(5)(d).
The trial court found that, "subsection (i) is the correct method to calculate [Appellant's] overtime, as his prior three years in overtime is less than the total overtime he received in 1999. As such, the Court shall average [Appellant's] overtime from 1997, 1998 and 1999 and finds that said average is in the amount of Twelve Thousand Five Hundred and 00/100ths ($12,500.00) Dollars, which amount shall be included in calculating [Appellant's] gross income." (Dec. 1, 2000, Order, 15).
Because the statute requires a trial court to include overtime pay in the gross pay of a parent, the trial court did not err when it added Appellant's overtime pay to his income. Appellee is correct in her assertion that the trial court did not impute income to Appellant, but rather, simply followed the child support guidelines regarding overtime pay. In addition, the trial court averaged Appellant's overtime from the prior three years rather than using the amount he received the year preceding the divorce because it was the lesser of the two calculations. The child support worksheet contains the correct numbers as calculated by the trial court.
We disagree with Appellant's contention that the wrong annual salary figure was used. The worksheet clearly lists Appellant's annual salary as $66,420.00, which is the value Appellant agrees should have been used. This assignment of error is overruled.
Appellant's third assignment of error argues:
 "THE TRIAL COURT ABUSED ITS DISCRETION AND, THEREFORE, ERRED TO THE PREJUDICE OF APPELLANT WHEN IT SET THE AMOUNT AND DURATION OF SPOUSAL SUPPORT PAYABLE TO APPELLEE."
Appellant argues that a specific procedure to determine a spousal support award exists and the trial court failed to follow the procedure. Appellant contends that the trial court must first must determine each party's separate property and divide the property acquired during the marriage, pursuant to R.C. § 3105.18(B). The court must then make a finding as to whether either party should be awarded spousal support. R.C. § 3105.18(C) sets forth factors the trial court should utilize in determining spousal support. Lastly, the trial court must dictate the basis for the award in enough detail to allow a reviewing court to determine whether the award is fair, equitable and in accordance with the law. Gullia v. Gullia (1994), 93 Ohio App.3d 653, 659.
Based upon this procedure, Appellant contends that the award was unreasonable. Appellant believes the factors set forth in R.C. §3105.18(C) weigh in favor of an award shorter in duration and smaller in amount than that which was ordered by the trial court. Appellant argues that the trial court did not take into account the resources Appellee received from the property settlement. Appellant contends that Appellee has the ability to earn more than she currently is earning, and that this was not considered by the trial court. He states that it was error for the trial court to consider only actual earnings rather than earning ability in its calculation.
Appellant also asserts that the trial court placed too heavy an emphasis on maintaining Appellee's standard of living. He points out that he now lives in a two bedroom apartment furnished with old "hand-me-down" furniture, while Appellee enjoys the same standard of living she had during the marriage because she is living in the marital home. Appellant contends that there is no rigid rule that spousal support must be sufficient to maintain the same standard of living as existed prior to the divorce, citing Josselson v. Josselson (1988),52 Ohio App.3d 60, 66, in support.
Appellant next argues that the seven year period for spousal support is unreasonable. He points out that the oldest child will reach the age of majority before the spousal support ends, with no corresponding adjustment in the support award.
Appellant also argues that the trial court abused its discretion when the trial court failed to consider the fact that Appellee had an extramarital affair under the "any other factor" category of R.C. §3105.18(C).
Appellee responds that the trial court did consider all of the factors listed in R.C. § 3105.18(C) and arrived at the appropriate decision. Appellee contends that an award of alimony is based on both the need of the obligee and obligor's ability to pay, citing Rowe v. Rowe (1990),69 Ohio App.3d 607. Appellee believes that, because the trial court reserved jurisdiction over the spousal support issue, modification is possible in the event that Appellant cannot pay.
We agree, in part, with Appellant's arguments. Under R.C. §3105.18(A), spousal support is defined as payments to a spouse for sustenance and support. R.C. § 3105.18(C) provides:
 "In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
"(a) The income of the parties * * *;
"(b) The relative earning abilities of the parties;
"(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
"(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside of the home;
"(g) The standard of living the parties established during the marriage;
"(h) The relative extent of education of the parties;
"(i) The relative assets and liabilities of the parties * * *;
"(j) The contribution of each party to the education, training, or earning ability of the other party;
"(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience is, in fact, sought;
"(l) The tax consequences, for each party, of an award of spousal support;
"(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
"(n) Any other factor that the court expressly finds to be relevant and equitable."
As is illustrated from a review of the above quoted factors, an award of spousal support is not predicated on the idea of need. R.C. §3105.18, as amended January 1, 1991, directs courts to consider the appropriateness and reasonableness of spousal support rather than necessity. This Court has previously addressed the amendments to R.C. § 3105.08 in Tomovcik v. Tomovcik (Jan. 22, 1997), Jefferson App. No. 95 JE 22, unreported, *3, recognizing the shift in the statute's focus. Therefore, under R.C. § 3105.18(C), a court considering an award of spousal support should consider all fourteen factors listed in R.C. § 3105.18(C) and award an amount, "which is appropriate and reasonable, not an amount based upon need." Schultz v. Schultz (1996),110 Ohio App.3d 715, 724.
This Court has also previously held that an award of spousal support will be viewed as reasonable if it is, "fair, proper, just, moderate, suitable under the circumstances, [and] fit and appropriate to the end view." Olenik v. Olenik (Sept. 18, 1998), Mahoning App. No. 94 CA 139, unreported. An appellate court is guided by the presumption that the lower court's findings are correct. Focke v. Focke (1992),83 Ohio App.3d 552, 555. However, the trial court's judgment entry must contain reasoning to support a spousal support award in, "sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Kaechele v. Kaechele
(1988), 35 Ohio St.3d 93, 97.
Appellant's suggestion that Appellee's marital infidelity, i.e., her fault in causing the divorce, should have been a factor in the spousal support award is misplaced. Ohio's statutory scheme for awarding spousal support, "does not allow a court to fine, penalize or reward either party at the time of the divorce decree." Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 70. Additionally, the parties were granted a divorce under the "no fault" provision of the divorce statute, § 3105.01(K). Appellant does not challenge the decision of the trial court to grant a "no fault" divorce. It is inconsistent for Appellant to argue that Appellee's "fault" should be considered on appeal when he is not challenging the decision to grant a "no fault" divorce.
Appellant's argument that the trial court did not take into account the fact that Appellee received a greater amount of property from the division of the marital property when determining the amount of spousal support is not directly relevant. The determination of spousal support is independent from the division of marital property. R.C. §3105.18(A). Marital property may be relevant indirectly, however, because the income produced from marital property is a factor that the trial court must consider in determining spousal support. R.C. §3105.18(C)(1)(a). Appellant correctly observes that Appellee was awarded significant liquid marital assets, including one half of Appellant's PSP and SSPP accounts, which could produce income. Our review of the record does not reveal any details as to the income producing capabilities of these assets. Nevertheless, the trial court must consider the potential income from the division of the marital assets and must factor such income into its decision.
Under factor (d), the trial court must consider the retirement benefits of the parties. The trial court found that Appellant has retirement benefits while Appellee does not. The trial court also ordered that the parties would keep their individual retirement accounts and that Appellee would receive one half of Appellant's pension from GM. These findings appear to contradict one another.
Under factor (f), the trial court noted that Appellee has been a "stay-at-home mother" since the birth of her children. (Dec. 1, 2001, Order, 11). The trial court's analysis did not take into account that both children were of school age, the ability of Appellee to work while the children were in school, or the effect of the shared parenting plan in which Appellant would have the children one half of the time. (Dec. 1, 2001, Order, 34-35).
Perhaps the most intriguing omission in the court's findings is any explanation as to why the court awarded Appellee more spousal support than her request of $1,250 per month for six years. (Feb. 9, 2000 Pretrial Statement, 6).
The omissions in the trial court's analysis of the spousal support award make it impossible for us to properly review the fairness of the award. We reverse and remand this part of the trial court's order for a redetermination of spousal support, which should include a sufficiently detailed analysis for purposes of subsequent appellate review.
Appellant's fourth assignment of error states:
 "THE TRIAL COURT ABUSED ITS DISCRETION AND, THEREFORE, ERRED TO THE PREJUDICE OF APPELLANT WHEN IT FAILED TO ISSUE A SEEK WORK ORDER AGAINST APPELLEE."
Appellant argues that the trial court abused its discretion when it failed to issue a seek work order against Appellee because Appellee is capable of working and earning money. Appellee worked during the marriage until the first child was born. Thereafter, Appellee remained at home to raise the children. Appellee also worked periodically as a model. At trial, Appellee testified that she used little effort to find employment and did nothing to prepare herself to reenter the workforce since she filed for divorce. Appellant asserts that because the children are in school and are living with Appellant half of the time, Appellee has ample time to work.
Appellee responds that R.C. § 3113.21(D)(4) gives the court power to issue a seek work order only against an obligor, citing Chinn v.Weaver (1991), 76 Ohio App.3d 64, 66-67, in support. Appellee argues that she is not the obligor, and therefore, the court cannot order her to seek work.
Former R.C. § 3113.21 states, in pertinent part:
 "(D) If a court or child support enforcement agency is required under division (A), (B), or (C) of this section or any other section of the Revised Code to issue one or more withholding or deduction notices
described in this division or court orders described in division (D)(3) or (4) of this section, the court shall issue one or more of the following types of notices or court orders, or the agency shall issue one or more of the following types of notices to pay the support required under the support order in question and also, if required by any of those divisions, any other section of the Revised Code, or the court, to pay any arrearages:
"* * *
"(4) If the obligor is unemployed, has no income, and does not have anaccount at any financial institution, or on request of a child supportenforcement agency made under section 3111.231 of the Revised Code, thecourt shall issue an order requiring the obligor, if able to engage in employment, to seek employment or participate in a work activity to which a recipient of assistance under Title IV-A of the "Social Security Act,"49 Stat. 620 (1935), 42 U.S.C.A. 301, as amended, may be assigned as specified in section 407(d) of the "Social Security Act,"42 U.S.C.A. 607(d), as amended." (Emphasis added.)
Under this statute, a trial court must order an obligor to seek employment: 1) upon request of a child support enforcement agency; or 2) if the obligor is unemployed, has no income, and does not have an account at any financial institution. We agree with Chinn, supra, that R.C. § 3113.21(D) only applies to obligors. Because we have reversed and remanded the child support order based on Appellant's second assignment of error, it has not yet been determined whether Appellee is an obligor.
Nevertheless, even if Appellee were the obligor, a trial court cannotsua sponte issue a seek work order unless three conditions are met: the obligor is unemployed, has no income, and does not have an account at any financial institution. It is obvious from the record that Appellee has an account at a financial institution. Therefore, there is no basis to issue a seek work order against her. It is also evident that the child support enforcement agency has not requested a seek work order against Appellee.
For these reasons, Appellant's fourth assignment of error is overruled.
Appellant's fifth assignment of error argues:
 "THE TRIAL COURT ABUSED ITS DISCRETION AND, THEREFORE, ERRED TO THE PREJUDICE OF APPELLANT WHEN IT ORDERED HIM TO PAY A PORTION OF THE COST OF APPELLEE'S BREAST ENHANCEMENT SURGERY."
Appellant argues that the trial court erred when it failed to make a determination as to whether Appellee's breast implants, acquired during the marriage, are marital or separate property. Appellant contends that the court proceeded as if they were marital property when it required Appellant to pay part of their cost. Appellant maintains that requiring him to pay for "items" of such intimate nature is an abuse of discretion.
Appellee responds that the court did not need to make any property determination because the bill from the surgery is a medical expense which is simply a marital liability. Appellee asserts that the only controversy that exists is whether the trial court abused its discretion when it determined the money owed is a marital liability.
Appellee argues that husbands and wives have a duty to support each other and, because of this duty, Appellant is required to pay for at least part of the surgery. Appellee also argues that paying for medical services is part of the statutory duty a husband owes his wife, citingWolf v. Friedman (1969), 20 Ohio St.2d 49, in support. Because Appellee's characterization of this issue is partially correct, this assignment of error lacks merit.
In reviewing a property division, we may not reverse the judgment of the trial court absent a finding of an abuse of discretion. Cherry v.Cherry (1981), 66 Ohio St.2d 348, 355. The goal of the trial court in dividing the marital property is to reach an equitable result; "[t]he method by which the goal is achieved cannot be reduced to a mathematical formula." Kaechele, supra, 35 Ohio St.3d at 96. We review the property division as a whole in determining whether it has achieved an equitable and fair division of the marital estate. Jelen v. Jelen (1993),86 Ohio App.3d 199, 203.
Appellant borrowed money from his SSPP account to pay for Appellee's breast enhancement surgery. The loan was taken out during the marriage, which presumptively defines it as a marital liability. Pursuant to R.C. § 3105.171, marital assets and liabilities are to be equally distributed unless an inequitable result would occur. Appellant became responsible for one half of the amount remaining on the loan, and the trial court's marital property division reflects this conclusion. Looking at the property division as a whole, we find no abuse of discretion in allocating one half of the liability to each party.
Appellant's sixth assignment of error asserts:
 "THE TRIAL COURT ABUSED ITS DISCRETION AND, THEREFORE, ERRED TO THE PREJUDICE OF APPELLANT WHEN IT USED THE FINAL TRIAL DATE OF JULY 25, 2000 AS THE DATE OF TERMINATION OF THE MARRIAGE FOR PURPOSES OF VALUATION OF CERTAIN MARITAL ASSETS RATHER THAN A DE FACTO TERMINATION DATE OF AUGUST 19, 1999."
Appellant argues that, although the trial court found the marriage terminated on the last day of trial, July 25, 2000, the more appropriate date would be August 19, 1999, the date Appellee filed for divorce. Appellant agrees that the termination date of a marriage is usually the date of the final hearing, but contends that a court may use a de facto termination date when the earlier date would result in a more equitable valuation of the marital property. See R.C. §§ 3105.171(A)(2)(a-b);Berish v. Berish (1982), 69 Ohio St.2d 318, 321. He concludes that, according to the record, August 19, 1999, was the de facto termination date.
Appellant relies on Gullia, supra, in support of his argument that the trial court abused its discretion in not using August 19, 1999, as the termination date. In Gullia, the parties separated in 1984 but did not file for divorce until 1987. The divorce was granted in 1990. The evidence established that, after separation, the parties maintained separate residences, separate business activities and separate bank accounts. The Eighth District Court of Appeals held that the trial court abused its discretion by not using a de facto termination date of January, 1984, for valuation purposes. 93 Ohio App.3d at 667. Appellant points out that the Gullia court gave substantial weight to the fact that no reconciliation attempt was made after the initial separation. Id. at 666. Applying the Gullia case to the case sub judice, Appellant argues that August 19, 1999, was the de facto termination date of the marriage because: Appellant was ordered to leave the home based on a domestic violence charge and so found a new place to live, and Appellee maintained a continuous relationship with another man after that date. Moreover, Appellant notes that the temporary orders requiring him to pay spousal and child support began on August 19, 1999. Therefore, Appellant contends that with respect to the valuation of the PSP and SSPP accounts, the trial court should have used August 19, 1999, as the termination date as well.
Appellant also argues that a trial court is not required to use the same termination of marriage date as the valuation date for every piece of marital property. Berish, supra, at 19. Appellant argues that the marriage termination date for the evaluation of equity in the marital home should continue to be July 25, 2000. Appellant's argument is based on the temporary order that required him to pay the mortgage and maintain the marital residence until July 25, 2000. Appellant argues that the later date will enable him to receive some credit for the additional equity in the home which he provided. Appellant's argument is not persuasive.
"The decision to use the final hearing date as the valuation date or another alternative date pursuant to R.C. § 3105.171(2)(a) and (b) is discretionary and will not be reversed on appeal absent an abuse of discretion." Schneider v. Schneider (1996), 110 Ohio App.3d 487, 493. A trial court may use a de facto termination date when such a date would be equitable. Berish, supra, at 320. Otherwise, it is presumed that the date of the final divorce hearing is the appropriate termination date of the marriage. Id; Glick v. Glick (1999), 133 Ohio App.3d 821, 828.
The trial court considered whether a de facto date of termination should be used. (Dec. 1, 2000 Order, 4). The factors listed by the trial court to find a de facto date of termination included: whether there was a bilateral agreement to end the marriage; whether the parties maintained separate residences, separate business activities, and separate bank accounts; and whether the parties failed to attempt to reconcile. (Dec. 1, 2000 Order, 4). These are all appropriate factors for the trial court to consider. Gullia, supra.
The trial court found that it was, "unable to disentangle the parties financially as of the date of separation and therefore, cannot determine a de facto termination of marriage that would be equitable to both parties." (Dec. 1, 2000 Order, 4). The record indicates that the parties acquired separate checking and savings accounts prior to the divorce, the parties lived separately, but that Appellant was supporting both parties even after separation. It is also clear that there was no separation agreement. Although Appellant was charged with domestic violence, the charge was apparently dismissed shortly afterward, and there was nothing preventing him from entering or using the marital home. Although Appellee testified that the marriage was essentially over after she filed for divorce, there is nothing in Appellant's testimony confirming this conclusion. Because of the contradictory nature of these facts, the trial court did not act arbitrarily and unreasonably when it failed to determine a de facto termination date.
Furthermore, Gullia can be distinguished from the instant case. InGullia, the homemaker-wife started her own business after the separation and was not solely dependent upon her husband during the separation. In the present case, Appellee relied solely on Appellant to provide for her even after the separation. More importantly, Appellant has not indicated how the later valuation date prejudiced him, while making it very clear that the date the trial court used benefitted him with respect to the valuation of the marital home. Gullia does not discuss the prejudicial effect of an erroneous valuation date, but, "[i]t is an elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that error was prejudicial to him." Smith v. Flesher (1967),12 Ohio St.2d 107, 110. Without some showing of prejudice, we have no basis for reversing the trial court decision. We therefore overrule the sixth assignment of error.
In conclusion, we overrule Appellant's second, fourth, fifth and sixth assignments of error. Based on Appellant's first and third assignments of error, we reverse the trial court's orders regarding child support and spousal support and remand those issues for further proceedings according to law and consistent with this opinion.
Vukovich, P.J., concurs.
DeGenaro, J., concurs.